IN THE UNITED STATES DISTRICT COURT
DISTRICT COURT OF NEW JERSEY

```
HELEN LOVE,                    :
                               :      HONORABLE JOSEPH E. IRENAS
          Plaintiff,           :
                               :   CIVIL ACTION NO. 07-3661-JEI-JS
     v.                        :
                               :         OPINION
NEW JERSEY DIVISION OF         :
YOUTH & FAMILY SERVICES;       :
BRUCE FITZGERALD; EILEEN       :
CRUMMY; and JANICE FISHER,     :
                               :
          Defendants.          :
                               :
```

**APPEARANCES:**

BARRY, CORRADO, GRASSI & GIBSON, P.C.
By:  Joseph C. Grassi, Esq.
2700 Pacific Avenue
Wildwood, New Jersey 08260
          Counsel for Plaintiff

OFFICE OF THE NEW JERSEY ATTORNEY GENERAL
By:  Kathleen M. Bartus, Esq.
     Kira F. Spaman, Esq.
R.J. Hughes Justice Complex
P.O. Box 116
Trenton, New Jersey 08625
          Counsel for Defendants New Jersey Division of Youth &
          Family Services, Eileen Crummy, and Janice Fisher

**IRENAS**, Senior District Judge:

     This case arises out of the "categorically deplorable[1]" and,

indeed, criminal behavior of Defendant Bruce Fitzgerald.

However, Fitzgerald has not answered the Complaint, and no one

---

     [1]  (Moving Defendants' brief, p. 2)

has entered an appearance on his behalf.[2]  The principal issue
raised by the other Defendants' instant summary judgment motion
is whether the State of New Jersey, or its employees, may be held
liable for their alleged failings in connection with Fitzgerald's
conduct.  Because the Court holds that, as a matter of law, they
cannot, their Motion for Summary Judgment will be granted.[3]

## I.

During the relevant time period, Plaintiff Helen Love was a
foster parent to A.D., a foster child in the New Jersey foster
care system administered by Defendant New Jersey Division of
Youth and Family Services ("DYFS").  Defendant Fitzgerald, a DYFS
employee, was Love's and A.D.'s "Family Service Worker."  (Pl's
Response to Defs' Statement of Undisputed Facts ("SUF") ¶ 6)[4]
Defendant Fisher was Fitzgerald's immediate supervisor, and
Defendant Crummy was acting director of DYFS.

For the purposes of the instant Motion, the following facts
are undisputed.  In July, 2005, Fitzgerald physically forced Love

---

[2]  The Court has no record of Fitzgerald having been served
with process.  However, he was deposed in this action, and he
stated at his deposition that he received the complaint against
him.

[3]  The Court exercises federal question subject matter
jurisdiction over this suit pursuant to 28 U.S.C. § 1331.

[4]  As a Family Service Worker, Fitzgerald "monitored" Love
and "provided social worker services" to her and A.D.  (Pl's
Response to Defs' SUF ¶ 7)

to have sexual intercourse with him against her will in the bedroom of her house.  (Love Dep. p. 103)  Prior to this incident, Fitzgerald had made two other unwanted sexual advances at Love. (Love Dep. p. 92-93, 95-97)[5]

On August 10, 2005, while alone with A.D. in Love's house, Fitzgerald directed A.D. to undress and pose in a sexually explicit manner while he took photographs of her.  In connection with this incident, Fitzgerald pleaded guilty to criminal sexual contact and official misconduct and was sentenced to a term in New Jersey State prison.[6]  DYFS also fired him as a result of the incident.

After an investigation of the incident with A.D., DYFS removed A.D. from Love's care because Love: (1) allowed A.D. to be alone with Fitzgerald after his sexual assault on Love; and (2) failed to follow child abuse reporting guidelines.  (Defs' Ex. J, Q)  DYFS also revoked Love's license to provide in-home

---

[5]  Fitzgerald testified that he "never" had any physical contact of a sexual nature with any foster parent.  (Fitzgerald Dep. p. 102).  However, for the purposes of this motion only, the other Defendants do not dispute Love's testimony that Fitzgerald sexually assaulted her.

[6]  According to the New Jersey Department of Corrections' "Offender Search Webpage," available at https://www6.state.nj.us/ DOC_Inmate/inmatesearch.jsp, Fitzgerald began serving his sentence on October 20, 2006, and was paroled on October 22, 2009.

childcare to non-foster children.[7]  Love does not dispute that
she did not report to DYFS or the police, either her encounters,
or A.D.'s encounter, with Fitzgerald.[8]  She has repeatedly
explained that she was extremely afraid of Fitzgerald and worried
that no one would believe her if she reported him.

When these events occurred, Love was in the process of
adopting A.D.  After A.D. was removed from Love's home, another
family adopted A.D.

Other than the incidents described above, there is no record
evidence demonstrating that during his 26-year career at DYFS
(Defs' Ex. T), Fitzgerald ever had a sexual relationship--
consensual or otherwise-- with any other foster parent or child.
Nor does the record disclose any other violent or threatening
behavior by Fitzgerald.

Love filed the instant Complaint on August 3, 2007, alleging
seven counts: (1) claims against all Defendants pursuant to 42
U.S.C. § 1983 for violation of Love's 14th Amendment rights
(specifically, her rights to substantive due process and equal
protection of the law); (2) assault and battery against

---

[7]  After an administrative appeal, Love's licenses were
restored to her.  (Robertson Dep. p. 39)

[8]  The record is somewhat unclear about how the Camden
County prosecutor learned of the incident with A.D.  It appears
that Love called a friend who, in turn, contacted someone who
contacted the Camden County prosecutor.  (Love Dep. p. 143-47;
Robertson Dep. p. 45-48; Defs' Ex. J at p. 10)

Fitzgerald; (3) violation of the New Jersey Law Against
Discrimination, N.J.S.A. 10:5-12, apparently against all
Defendants; (4) negligence against all Defendants except
Fitzgerald; (5) "gross insult," against DYFS only; (6)
"professional negligence" against all Defendants; (7) violation
of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c), against
all Defendants.

The appearing Defendants (i.e., all Defendants except
Fitzgerald) presently move for summary judgment.

## II.

Summary judgment is appropriate when "the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  In deciding a motion for summary
judgment, the court must construe all facts and inferences in the
light most favorable to the nonmoving party.  *See Boyle v.*
*Allegheny Pennsylvania,* 139 F.3d 386, 393 (3d Cir. 1998).  The
moving party bears the burden of establishing that no genuine
issue of material fact remains.  *See Celotex Corp. v. Catrett*,
477 U.S. 317, 322-23 (1986).  A fact is material only if it will
affect the outcome of a lawsuit under the applicable law, and a
dispute of a material fact is genuine if the evidence is such

5

that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 252.

### III.

### A.

DYFS is entitled to summary judgment on all claims against it because, as a division of the State of New Jersey, it is entitled to Eleventh Amendment immunity. *Garlic v. NJ Div. of Youth & Family Servs.,* 2009 U.S. Dist. LEXIS 76162 (D.N.J. Aug. 24, 2009)*; Anastasia v. N.J. Div. of Youth & Family Servs.*, 2005 U.S. Dist. LEXIS 33388 (D.N.J. July 5, 2005); *Coleman v. N.J. Div. of Youth & Family Servs.*, 246 F. Supp. 2d 384 (D.N.J. 2003) (Irenas, S.D.J.); *Doe v. Div. of Youth & Family Servs.*, 148 F. Supp. 2d 462 (D.N.J. 2001); *Simmerman v. Corino*, 804 F. Supp. 644 (D.N.J. 1992)(Irenas, D.J.)[9]. The Eleventh Amendment also bars the claims against Defendants Fisher and Crummy in their official capacities. *See Garlic*, 2009 U.S. Dist. LEXIS at *5-6; *Simmerman*, 804 F. Supp. at 649-50. Love concedes these points in her brief.

All claims against DYFS, and Fisher and Crummy in their official capacities, will be dismissed with prejudice.

---

[9] Affirmed without opinion, *Simmerman v. Corino*, 16 F.3d 405 (3d Cir. 1993).

6

**B.**

Summary judgment is warranted on the federal and state constitutional claims (Counts 1 and 7) against Fisher and Crummy in their individual capacities because they are entitled to qualified immunity.[10]

In analyzing whether a defendant is entitled to qualified immunity,

> [f]irst, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Although first

---

[10]  The Court has found no caselaw addressing the question of whether persons subject to liability under the New Jersey Civil Rights Act have a qualified immunity defense.  However, the legislative history of the Civil Rights Act states that the Act was "modeled on" § 1983, the Massachusetts Civil Rights Act, and the Maine Civil Rights Act.  S. 211-1558 (N.J. 2004) *available at* http://www.njleg.state.nj.us/2004/Bills/S2000/1558_I1.PDF. Because qualified immunity is a defense to all three of these causes of action, *see Kelley v. Laforce*, 288 F.3d 1, 10 (1st Cir. 2002); *Hegarty v. Somerset County*, 53 F.3d 1367, 1372 (1st Cir. Me. 1995), the Court assumes without deciding that, as a legal matter, state officials sued in their individual capacity under the New Jersey Civil Rights Act do have a qualified immunity defense available to them.  However, the Court need not decide the issue because even if there is no qualified immunity to suits under the Civil Rights Act, as explained next, there has been no constitutional violation in this case.

addressing the constitutional question is "no longer . . . mandatory," *Pearson*, 129 S.Ct. at 818, in this case, the Court elects to follow the sequence set forth in *Saucier*.


### 1.

Love asserts that Fitzgerald violated her Fourteenth Amendment rights to equal protection and substantive due process. She asserts that Fisher and Crummy also violated her Fourteenth Amendment rights, by failing to adequately supervise Fitzgerald, and by failing to implement a policy against social workers "sexually terrorizing" foster parents.  The arguments as to Fisher and Crummy fail.[11]

As an initial matter, it is abundantly clear that neither Fisher nor Crummy may be liable for Fitzgerald's conduct based on a respondeat superior theory.  The mere fact that Fisher and Crummy were Fitzgerald's supervisors does not subject them to liability.  *See Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution.") (emphasis added);  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

---

[11]  The claims against Fitzgerald are not at issue in this motion and the Court does not address them.

"A state official may be held responsible under § 1983 for exercising or failing to exercise supervisory authority . . . if that official has exhibited deliberate indifference to the plight of the person deprived." *C.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000)(en banc).[12]   Under this standard, supervisory liability may only be imposed when a plaintiff proves "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval." *Id.*

There is no evidence in the record that would support a conclusion that Fisher or Crummy should have known of the risk that Fitzgerald would sexually assault Love.  Love asserts that they should have known of the risk because Fitzgerald once had an "open affair" with a co-worker in 2004.  (Pl's Opposition Brief, p. 17)  But there is no evidence in the record that either Fisher or Crummy knew of the relationship.  Moreover, even if they had known, Fitzgerald's role in the 2004 relationship with his co-worker was materially different than his behavior with regard to Love.  In the 2004 relationship, according to another DYFS employee working in the office at the time, Fitzgerald seemed to be the *victim* of "stalking" and "sexual harassment."  (Ficarelli Dep. p. 53-54)

---

[12]   *Cert. denied,* 533 U.S. 915 (2001).

9

Nor does the record support a conclusion that Fisher and Crummy somehow communicated approval of inappropriate-- indeed, criminal-- sexual contact between DYFS workers and foster parents.  Love agues that by failing to implement a policy against "sexual terrorism," Fisher and Crummy tacitly approved of such conduct.  This argument fails.  A reasonable juror could not conclude that failing to implement a policy prohibiting criminal conduct is tantamount to approval of criminal conduct.[13]

A reasonable juror could not conclude that Fisher and Crummy violated Love's Fourteenth Amendment rights.

## 2.

Alternatively, even if Love could establish a constitutional violation, it would not be a violation of a clearly established right.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "This inquiry . . . must be undertaken in light of the specific context of the case,

---

[13] Similarly, a reasonable juror could not conclude that failing to prohibit criminal conduct caused the criminal conduct. *See A.M. v. Luzerne County Juvenile Detention Center,* 372 F.3d 572, 586 (3d Cir. 2004) ("Individual defendants who are policymakers may be liable under § 1983 if . . . such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm.'") (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

10

not as a broad general proposition," id. at 201, and "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson*, 129 S. Ct. at 822.

The Court concludes that, under the specific facts of this case-- particularly the fact that Fitzgerald had never before engaged in such conduct--  Fisher and Crummy could not have known in 2005 that their failure to act amounted to deliberate indifference to Love's Fourteenth Amendment rights.  Thus, Fisher and Crummy did not violate a clearly established right.

In summary, Fisher and Crummy are entitled to qualified immunity because a reasonable juror could not conclude that Fisher and Crummy violated Love's constitutional rights, and even if those rights were violated, they were not clearly established. Accordingly, Fisher and Crummy are entitled to summary judgment on Counts 1 and 7.


**C.**

Similarly, Fisher and Crummy are entitled to summary judgment on the Law Against Discrimination claim (Count 3).  Love asserts that Fisher and Crummy aided and abetted Fitzgerald's violation of N.J.S.A. 10:5-12(*l*) which prohibits "any person" from "refus[ing] . . . to contract with . . . any other person on the basis of . . . sex."

11

Assuming without deciding that Fitzgerald's "quid pro quo sexual harassment" (Opposition Brief, p. 19) violated the above-quoted subsection of LAD, the record does not support a conclusion that either Fisher or Crummy aided or abetted the alleged violation.  "[I]n order to hold [a person] liable as an aider or abettor, a plaintiff must show that (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004) (internal citation and quotations omitted).  As already explained *supra*, there is no record evidence from which a reasonable factfinder could conclude that either Fisher or Crummy knew or should have known of Fitzgerald's illegal activity.  Also, failing to explicitly prohibit a criminal act does not amount to substantial assistance of the criminal act.

Accordingly, Fisher and Crummy are entitled to summary judgment on Count 3.


### D.

Fisher and Crummy are also entitled to summary judgment on the negligence claim (Count 4).  Similar to her

12

§ 1983 and LAD claims, Love asserts that Fisher and Crummy negligently supervised Fitzgerald and negligently failed to implement policies prohibiting social workers from "engaging in . . . improper relationships" with foster parents.  (Opposition Brief, p. 23)

Fisher and Crummy are entitled to good faith qualified immunity under the New Jersey Tort Claims Act.  N.J.S.A. 59:3-3 provides, "[a] public employee is not liable if he acts in good faith in the execution or enforcement of the law."  "Negligence is insufficient to defeat the immunity provided by [this] section." *Nicini v. Morra*, 212 F.3d 798, 815 (3d Cir. 2000) (en banc) (citing *Canico v. Hurtado*, 144 N.J. 361, 365 (1996)).

Moreover, this Court's conclusion that Fisher and Crummy are entitled to qualified immunity from Love's constitutional claims necessitates a conclusion that they are entitled to good faith immunity from the negligence claim, which Love herself states is based on the same facts and legal theory.  *See Jimenez v. New Jersey,* 245 F. Supp. 2d 584, 588 (D.N.J. 2003) (Rodriguez, S.D.J.) ("'the same standard of objective reasonableness that applies in § 1983 actions also governs questions of good faith arising under the Tort Claims Act.'  Thus, having found that the defendant's conduct was reasonable in that no constitutional rights were violated, the Court further concludes that Plaintiff's state law claims against the individual defendants

13

fail.") (quoting *Wildoner v. Borough of Ramsey*, 162 N.J. 375, 744 (2000)); *cf. Hill v. Algor,* 85 F. Supp. 2d 391, 411 (D.N.J. 2000) (where issues of material fact precluded summary judgment on § 1983 qualified immunity, those same issues precluded summary judgment on state law good faith immunity).

Fisher and Crummy are entitled to summary judgment on Count 4.

### E.

Lastly, Count 6 (professional negligence) also fails. Love apparently asserts a common law malpractice claim against Fisher and Crummy. However, Fisher and Crummy provided no professional service to Love. They were merely DYFS administrators who supervised Fitzgerald.

At its core, this claim does not fundamentally differ from the other claims asserted, and fails for the same basic reason the other claims fail. Neither Fisher nor Crummy knew, or had reason to know, that Fitgerald would sexually assault Love.

Accordingly, Fisher and Crummy are entitled to summary judgment on Count 6.

### IV.

For the above-stated reasons, the moving Defendants are entitled to summary judgment on all claims asserted against

14

them.[14]   Accordingly, only Fitzgerald will remain as a Defendant to this suit.[15]   The Court will issue an appropriate order.


Date: July 22, 2010

                              s/ Joseph E. Irenas
                         **JOSEPH E. IRENAS, S.U.S.D.J.**

---

[14]   The moving Defendants also asserted cross claims for indemnification and contribution against Fitzgerald.  Those claims will be dismissed as moot.

[15]   In addition to the order disposing of the instant motion, the Court will issue an order to show cause why the claims against Fitzgerald should not be dismissed for lack of timely service of process.  *See* Fed. R. Civ. P. 4(m).